## No. 2308
### Second Circuit

## GOLD v. CADDO TRANSFER & WAREHOUSE CO., INC.

(November 10, 1927.  Opinion and Decree.)
(December 21, 1927.  Rehearing Refused.)

*(Syllabus by the Court)*

1. **Louisiana Digest—Warehousemen and Warehouse Receipts—Par. 6.**
The statutory as well as the common law rule is that in the absence of special contract a warehouseman is not an insurer of the safety of goods stored with him but is required to exercise only a reasonable degree of prudence; reasonable prudence being such degree of care as an ordinarily careful person would exercise in respect to similar property stored by him, or that care and diligence which ordinarily prudent warehousemen are accustomed to exercise under similar circumstances.

2. **Louisiana Digest—Warehousemen and Warehouse Receipts—Par. 6.**
Where a warehouseman kept goods stored in a brick building with a concrete floor, put out poison, kept traps set and raised and kept cats in his building for the destruction of rats and mice, he is not liable for damage to goods by them while in his possession.

3. **Louisiana Digest—Warehousemen and Warehouse Receipts—Par. 6.**
Where a warehouseman on receiving rugs on storage cleaned and sprayed the premises with a disinfectant, which was repeated at regular intervals, spread the rugs, placed upon them moth or camphor balls, rolled them together, wrapped them in heavy paper and tied the ends with twine, he is not responsible for damage to the goods by moths, where it is shown that these are used and approved by warehousemen generally as the best methods of preventing damage to such goods by moths.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo. Hon. E. P. Mills, Judge.

Action by Mrs. C. Gold against Caddo Transfer & Warehouse Co., Inc.

There was judgment for plaintiff and efendant appealed.

Judgment reversed.

T. Overton Brooks, of Shreveport, attorney for plaintiff, appellee.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, attorneys for defendant, appellant.

## STATEMENT OF THE CASE

ODOM, J.   On June 6, 1921, plaintiff stored with defendant, a warehouseman, some rugs and mattresses, which remained in storage for slightly over two years. When they were removed from the warehouse, the rugs were found to be damaged by moths and the mattresses by rats or mice.

She brought suit to recover the amount of damage, alleging that the damage was caused

"solely and only by the negligent and faulty manner in which defendant packed and stored the said articles * * * that defendant failed to protect said property as an *ordinarily prudent man would have* protected it".

Defendant, in answer, admitted that the goods, when released by it, were damaged to some extent, but alleged that

"if any (damage) was done while in its possession, was due to no fault or negligence on its part; that it carefully and prudently wrapped, packed and disinfected said goods at the time of receiving them and thus exercised the care with regard to them that a reasonably careful owner of similar goods would have exercised for their preservation and safe-keeping; that its warehouse is properly constructed and carefully maintained for the preservation and safe-keeping of goods stored with it, and that it exercised due care and caution at all times to prevent petitioner's goods from deteriorating or being injured in any manner while in its possession."

The lower court found for plaintiff and gave judgment for $90.00.

Defendant appealed, and plaintiff answered the appeal, asking that the amount be increased.

## OPINION

A warehouseman's liability for the care of goods stored with him is fixed in this state by statute.

Section 21 of Act No. 221 of 1908, which is an act to make uniform the laws of Louisiana with the laws of other states governing warehouse receipts, defining the duties of warehousemen, etc., reads as follows:

"A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care."

The common-law rule is expressed by text writers in practically the same language.

In 40 Cyc. 429, after stating that a warehouseman is not an insurer of the goods, unless by special contract, nor liable for loss or injury caused by an act of God, or the public enemy, nor for losses due to inherent defects in the goods "or other causes not due to negligence on his part", the text writer continues:

"He is required to exercise ordinary care in the custody of the goods, by which is meant that degree of care which ordinarily prudent warehousemen are accustomed to exercise in regard to similar goods under like circumstances."

So that we must determine whether, as a matter of fact, the defendant did, in this case, exercise, in the custody of the goods stored, that degree of care that a reasonably careful warehouseman or owner of similar goods would exercise.

There was no special contract entered into by the parties in this case. The defendant, when the goods were received, issued the ordinary uniform warehousemen's receipt.

The undisputed facts are that defendant's building is constructed of brick with the first or ground floor made of concrete, and that rats and mice cannot enter from the outside, except on occasions when doors are open for passage in and out of

the building, and that their entry at such times is highly improbable, due to the disposition of rodents to flee on such occasions, but that they are at times carried into the building in household goods packed before delivery, and that it is impossible to discover them without completely unpacking the goods, which is not customary or advisable.

In order to rid the warehouse of rodents the manager keeps traps set, puts out poison, and raises and keeps cats therein.

· These, it is shown, are the approved and best methods of destroying rats and mice.

· It is further shown that at one time prior to or during the time these goods were stored, defendant employed a Government expert to inspect the building, to advise as to its safety, and as to the best methods of keeping it free from vermin and rodents, and that the expert remained for ten days, made a careful inspection, approved the construction of the building and approved the above methods.

. With reference to the damage to the rugs by moths, the testimony shows that when they were received, the floors and walls of the building where they were stored were cleaned and sprayed with a disinfectant, which spraying was repeated at regular intervals of some two or three months; that the rugs were spread upon the floor and camphor or moth balls in sufficient quantities put upon them, rolled on a pole together, then wrapped securely in heavy paper and the ends securely fastened with twine.

Defendant's witnesses testify, and it is not disputed, that these are the customary and approved methods of preventing injury to such goods by moths.

· Counsel for plaintiff suggested that the premises could have been fumigated with

formaldehyde; but it is shown that such method is not practical and is never used by warehousemen because of the resultant damage to furniture and especially to articles of brass.

Counsel for plaintiff says, in brief:

"The doctrine of res ipsa loquitur applies clearly in this case. The goods in question were received in good condition by defendant for storage. They were returned to plaintiff in a damaged condition."

If defendant's liability hinged upon the question whether, as a matter of fact, the goods were damaged while in defendant's possession, counsel's point would be well taken. But that is not the point, because that much is admitted. The point is, whether the defendant used that degree of caution and prudence in the care and custody of the goods for their protection which ordinarily prudent warehousemen are accustomed to use under similar circumstances. The testimony shows that it did.

Counsel quotes, and apparently relies upon, the following rule found in 27 R. C. L., page 987, section 45.

"While, as has been seen, a warehouseman is not an insurer of the safety of goods stored with him, but is required to exercise a reasonable degree of prudence for their protection. Reasonable care has been defined as that degree of prudence which an ordinarily careful person would exercise in respect to similar property stored by himself, or the care and diligence which ordinarily prudent warehousemen are accustomed to exercise under similar circumstances."

This rule, under the testimony adduced, is fatal to plaintiff's case.

We quote the following from 27 R. C. L., page 995, section 54:

"A warehouseman, by virtue of his duty to exercise reasonable care, is bound to take such steps as are usually taken by reasonably prudent warehousemen to guard

the stored goods against rats and mice, but not being an insurer, he is not liable for damage from such cause if he has taken ordinary precautions to prevent the loss."

In a note to the case of Schmidt vs. Blood, 24 Am. Dec. 155, it is stated:

"A warehouseman is not liable for loss of goods in his warehouse which have been destroyed by rats if he has taken ordinary precautions to prevent such loss."

Citing Edwards on Bailment, 295, and Story on Bailment, section 444.

In an elaborate note appended to the case of Carley vs. Offutt & Blackburn, 136 Am. Dt. Rep. 207, we find the following at page 231:

"A warehouseman is bound to guard against damage to goods stored with him, which may be caused by rodents, but he is not liable for the loss of such goods so destroyed if he has taken ordinary precautions to prevent such loss; Story on Bailments, Sec. 444. The best methods known of destroying them include the laying of poison or the more common ones of trapping them or keeping cats or dogs. In Califf vs. Danvers, 1 Peake, 114, 3 R. R. 666, the keeping of cats was accepted as common diligence; and in Taylor vs. Secrist, 2 Disn. (Ohio) 299, keeping a terrier dog was regarded in the same light. It is hardly necessary to seek analogous decisions, as we think there has been no occasion, since these cases, prompting the destruction of rats and mice by other means."

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be reversed and avoided, and plaintiff's suit dismissed at her cost in both courts.